The facts of this case are fairly straightforward, basically Raylin Richard was living with a girl who had three children, two young boys and a girl. And one day he found the two little boys looking under the door to the bathroom and he stopped them from doing that, realized that there was a gap under the door and as a result the kids could see inside the bathroom and so he got the idea one day to put his cell phone down there and videotape the 12-year-old girl taking a shower. He stored those items on his phone and eventually transferred from his phone to his laptop computer. What he did is a crime and there is no question about that, the only question is, is it a federal crime and is it involving interstate commerce and the degree to which he should be punished. Those are really the only issues. Did you represent him at trial? I did and he was originally charged with multiple counts of production of child pornography and that's a pretty serious charge because it carries a mandatory minimum of 15 years of hard labor. So the prosecutor and I actually had some discussions about how or why that would apply and one of the discussions we had was, you know, this would theoretically apply to kids in high school using their phones to videotape other under the theory of the government's case, they could be charged with and convicted in federal court of producing child pornography. Let me ask about this case in particular though. I was a little confused by the colloquy when he entered his guilty plea and I believe this is a quote from you as defense counsel, we don't intend to say that he's pleading guilty but he's not really guilty. What we are saying is he is guilty of the facts of this case. I believe that may have been at the sentencing hearing. Yes. Is there any, are you arguing now regarding his guilt or not when you're here today? I guess I'm a little confused by this quotation in the context of both sentencing and the rearrangement. That was at sentencing, Your Honor, and it came up because the court, the judge felt that the defendant wasn't showing acceptance of responsibility and so our argument was that the charge overstates the conduct and the potential penalty overstates the conduct and what we did want to do at sentencing was for the court to say, well, I think you're saying he's not guilty and so I'm going to punish you by not giving you acceptance of responsibility. So, I think it's important just to keep in mind that what he was looking at originally was a production of child pornography. That's a serious offense and it should be. But the point is you had a very successful plea negotiation. You got it reduced to this one count and now you're saying, by the way, you can't convict him on this count. Now you're either incredibly or clever or else incredibly trying to get a good deal on appeal. Well, there was an original indictment. He pled to a one count bill of information and that's all he pled to and he pled to that because it obviously reduced his potential mandatory minimum. So under what he pled to, it's a five to 20 year sentence. So it reduced it from 15 years to five years. Still very serious. We always had questions about whether it should be in federal court or state court, but it's not my decision to whether someone goes to trial or not. It's his decision and he chose not to go to trial probably because of the coercive effect of having six counts of production of child pornography, three counts of attempted possession of child pornography, and one count of possession of child pornography in an original indictment. So yes, he did choose. He made that decision. The clear charge to me would be possession of child pornography. What sentence does that carry? I believe it's up to 10 years. But you couldn't sell that one, huh? We couldn't sell it and I'm not sure why. Maybe my selling skills are not very good or maybe they just decided not to. But how much would production, how much would that have added to the potential sentence? The production of child pornography? Yeah. The minimum sentence is 15 years mandatory for production and that's, you know, clearly that was a coercive effect. But you mentioned two things though, two reasons why he possibly entered a guilty plea. One, I think you said, was the sentence, the charge carried a lesser sentence. The other was because if he had gone to trial he may well have been convicted of the several other counts that had been alleged, but not once have you said that he chose to plea guilty because he was in fact guilty of the offense, which is part of the colloquy at the rearrangement. It just seems like when we review what the arguments are made here, there's an attempt to maybe crawl fish out of what had been pled to. I will say this. If interstate commerce encompasses using a phone or a computer but not going on the internet, just using it because the phone or computer traveled at interstate commerce, then it fits. But I just don't, I think that means that there's virtually no limit to the interstate commerce jurisdiction. So if this desk came from Amazon and I used it to hit somebody over the head, then I could be charged in federal court because this is a facility of interstate commerce. So virtually there is no limit. But it's not a communication. I've got two things here. One is a jurisdictional hook, which is the use of some device in interstate commerce, and of course shipping the cell phone would satisfy that. The other thing is the conduct that he's charged with, and that's to transport. So you've got two separate things there. I agree with that, and the transport, if the transport is sufficient to move it from his phone to his computer by plugging it into the computer, then I agree. The question is will you waive that in your colloquy? I think there's an argument that he waived it, yes. I think there is an argument that he waived it. I think, though, that he waived it in the sense that if that's what the law is, then yes, he waived it. But he doesn't agree that that's what the law is or should be. Well, can't you enter a plea subject to the right to challenge the sufficiency on appeal? Yes, an Alfred plea or a Crosby plea, and we discussed that with the prosecutor and he refused to agree to that. So from there, the issues get worse because the next issue for us is the question of the cross-reference. And the sentencing guidelines, basically for this offense, the sentencing guidelines should have carried a base offense level of 22. But the probation officer who basically calculated the guidelines used this cross-reference section 2G2.2, and what it says is that the cross-section should be used if the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement a minor to engage in sexually explicit conduct for purpose of producing a visual depiction of such conduct. What's important here is that the cross-reference doesn't use the word using because there was some questions about was he using her or not using her. This cross-reference, by its terms, does not appear to apply. But there's a note at the end after the actual guideline that uses the word using and says that this cross-section should be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement a minor to engage in sexually explicit conduct. Nowhere in the sentencing guideline is the word using used, but in the note it's used. It used to be if there was an ambiguity, then the defendant gets the benefit of the ambiguity. I'm not sure if that still is the case, but it's not very difficult to use language that would have said using in the guideline itself or language that just said capturing, photographing, videotaping. We have this published case from McCall. It's almost on all fours with this case. I cannot disagree with that. I think if you look at the language used in the guideline, it does not fit. If you can extrapolate and say, well, they intended to use the word using, or you can But we're bound by our precedent, though. Well, I think you are not necessarily bound by your precedent. I think you can change that. Well, I mean, I don't know that you're bound by your own precedent. I think you could certainly say the prior decision was incorrectly decided, which I think it was. In fact, I know my time is coming close, but the obstruction is another case that I think the government cited U.S. versus Upton in support of the argument that obstruction, he was given an obstruction point, but if you read the obstruction guideline, it's very clear that the obstruction is of the instant offense of conviction. It then goes on to say, if there is obstruction of the instant offense of conviction and the obstructive conduct related to either A, the defendant's offense of conviction and irrelevant conduct, or a closely related offense, and you increase it by two levels, it doesn't say obstruction in the instant offense or the closely related offense. The Upton case seems to say exactly that. Oh, it's really or. Well, it's not or. It's relevant conduct, though, and it's obstruction. Well, this was a one-count indictment. The obstruction they alleged was not at all related to this or relevant conduct. It wasn't used as relevant conduct. Well, it still could have come in if he had gone to trial, couldn't it? There was an issue as to whether it could or not, but the guideline doesn't say or. It does not say if you obstruct justice in this case, in the case of conviction, or in the other case, then it's enough. It doesn't say that. So, again, you know, it used to be that if there's ambiguity, the defendant gets the benefit of the ambiguity. I think that is still the law. If it is, there is clearly at least ambiguity, but the English language is such that if we read it, applying the English language, it requires obstruction in the instant offense of conviction, and if it carries over to a related offense, then it can apply. It doesn't mean that if obstruction was in the related offense, then it's okay to give him the obstruction in the instant conviction. That, I think, is pretty clear. That Upton case, that was a long case, and they discussed a whole bunch of things. At the very end, there was sort of like, oh, and by the way, there are a couple of issues here for sentencing purposes. Well, I mean, I realize you're relying on the guidelines, an interpretation, and it says, you're quoting from your brief, there's a two-level increase if the defendant willfully obstructed or impeded administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense. So it says during the course of the prosecution of this offense, and there's no question it was during the course, right? Of the instant offense. Well, that's right, because he was in jail for the instant offense at the time that he was trying to buy off another witness. Well, it related to something completely different. In the comment on the sentencing guidelines, it says that this applies if the obstructive conduct was related to defendant's offense of conviction and any relevant conduct. And certainly the phone call was to try to get a friend to talk to the mother of a teenage girl that he was apparently trying to have a relationship with. That is what it was. It was completely different. It wasn't related to the instant offense. But it certainly would be relevant conduct if he came up for sentencing. Well, it wasn't considered. The conduct that he was trying to hush up. If he had been convicted of what he had originally been charged with, I agree that it may have been relevant conduct. I'm not even sure of that. But this was a one-count bill of information charging him with only this offense. I think this occurred before that plea agreement had been reached. It occurred when he was in jail and he was making phone calls. But he had a six-count indictment when this occurred. But the investigation had been complete. It occurred because in the very beginning the indictment was so obscure we didn't even know what he was charged with or who the people were involved. And he was trying to find out. And, in fact, we filed a motion relevant to that because the indictment gave us virtually no information. So we tried to get a bill of particulars and couldn't even get that. So he was trying to get information, but he had already been indicted. The investigation had already been complete. Everything was done. And then he talked to Bubba, his sister's boyfriend, and said, Can you try to talk to her? The details of that didn't come out very much because there was not much evidence presented in that sentence. Do we know that the person that he contacted, the girl involved in his communication from the jail, was not part of any of the pending counts at the time he was in jail? She was part of it. It's hard to tell from the indictment, and that's why we filed a bill of particulars asking about it. I'm not exactly sure. I think there was a text message between him and her where they had been texting. But the text message was, Send me your sexiest picture. And so that, I think the government was saying, was attempted possession of child pornography. That's, I think, what that was about, but it's really not. What I want to know is, in the absence of a bill of particulars, did he just go through a checklist of people that he knew that he may have contacted involving minor young women? It could have been anybody. We had no idea. But the language of the obstruction says that he has to have obstructed or impeded the administration with investigation, prosecution, or sentencing of the instant offense, and that had nothing to do with the instant offense. And we've gone way over your original time, so you'll have some time for rebuttal. Thank you. If you can find a case that narrows this guideline, we'd appreciate it. Ms. Domingue. May it please the Court. I'm Camille Domingue, an Assistant United States Attorney. I represent the United States, who's the appellee in this case. And I'll begin, as counsel did, by talking about the factual basis issue. The government basically has two arguments in defense of this. The first is a waiver argument. This Court has long recognized the distinction between the failure to make an objection, a forfeited objection, which is subject to plain air review, and the intentional relinquishment of the right to make an objection. In the latter case, those alleged defects are completely unreviewable on appeal. And, again, this is the distinction the Court has long recognized. I cite several cases in the brief. Ravelez is how I'll pronounce it. It might be Ravelez, but I'll say Ravelez, talks about this intentional relinquishment, where the defendant not only fails to notice the alleged problem, but says, no, that's not a problem. Ravelez was a trial case involving a Bruton issue. The defendant said, no, I'm not going to make a Bruton objection. In this particular case, there were objections to the PSR that gave the district court some concern that the defendant was actually, I think her language is, some of your objections fly in the face of the facts set forth in the factual stipulation. If that's the case, if you disagree with your own factual stipulation, your remedy is to seek to undo your guilty plea and go to trial. And then she goes on and she makes some comment about, you know, this could be a problem for you with regard to acceptance of responsibility. And, obviously, it's implicit. It's going to be a problem with you in terms of the fact, Judge Jones, as you pointed out, defense counsel had negotiated a very favorable plea agreement in this case. So this was going to give him one big problem, you know, in terms of the big picture, and then another problem in terms of the instant sentencing. And what defense counsel says is, and, Judge Engelhardt, you quoted the language. This is, I think, ROA 631. The conversation takes place between ROA 629 and ROA 631. And defense counsel says, we're not saying he pled guilty, but he's not really guilty. We're making a guideline argument. What this Court said in Ravellis was where the defendant or defense counsel, because Ravellis in its footnote 6 specifically addresses defense counsel's ability to waive an objection on behalf of the defendant and how that waiver is valid on behalf of the defendant. No, right after he said, we're not saying he's not really guilty, he did hedge it. He said, what we're saying is that he's guilty of the facts of this case. Right. And then he goes on to say, and if those facts satisfy this guideline. So at that point, he's trying to talk the judge out of her concerns that there's a problem with the sufficiency of the factual basis. So he does say that, Judge. But then he goes on to say, and, you know, the guideline is what the guideline is. And if we fit under the guidelines, then, you know, we're stuck. We fit under the guidelines. And defense counsel's argument then, as it is now, you know, was really that was pertaining to this cross-reference. What had happened was the defendant had pled guilty to a transportation of child pornography, but by virtue of the 2G2.2C1 cross-reference, his guidelines were calculated as if it were a production case. Because, as we all know, the guidelines are sort of driven by this notion of real offense conduct. We're not going to look at what the defendant just pleads guilty to. We're going to take a look at what he actually does, the notion of real offense conduct. So that was sort of the context in which all of this came up at the guilty plea. The defendant, I would suggest, didn't like how high his guidelines were and was sort of trying to walk that fine line between saying, well, yeah, I did it, but it's not as bad as these guidelines would suggest in terms of recommending a sentence. And we would suggest to the Court that, you know, and that's the language in Ravellis. When the defendant or defense counsel makes such an express statement that, no, I'm not objecting to this, no, I'm not making that argument, then how can we expect the district court to override the express intention of defense counsel and sort of notice the error or the defendant's right sua sponte? And that's the language right out of Ravellis. So that's our first argument, that this is a pretty clear case of waiver. If it's waived, then it's unreviewable on appeal under any standard. We have an alternative argument on the merits. The case that the defendant relies on on appeal, Runyon, is a pre-2008 amendment case. The — in 2008, 2252 Cap A was amended purposefully based on a congressional judgment that we want to expand the coverage of 2252 Cap A. So we don't want to make this requirement that the images actually travel in interstate commerce. We're going to expand it. And the Ninth Circuit in Brown, a case I cited in my brief, says that this represents a congressional judgment that we want to expand the scope as far as the Commerce Clause authority is going to allow us. Is there any dispute that his contention, I understand, and I believe in the factual basis, is also that he used the USB cord? I think that's the factual plank on which his argument rests, is that he didn't transmit it electronically, but rather through the cord itself, the USB cord, that he linked the two devices by the USB cord. Is there any dispute about that, or is it just his self-serving statement that that's how he did it? A couple of responses to that. First, Judge, that is not in the factual stipulation. The only place the cord, the notion of using a cord, appears in the record is in his — the defendant's objections to the PSR. Basically, again, his argument, not that I didn't commit a crime, that, you know, he's saying it's not as bad as the guideline calculation would make it sound. So I would suggest that that was counsel's factual representation. That's not a fact that was ever proven, and it's not something to which he stipulated. In fact, I'll read you the stipulation. The stipulation is, Reischardt agrees and stipulates that he transported that image using a facility of interstate commerce. That is, he used his cell telephone and his computer to transport the image of child pornography from his cell phone to his computer for storage. And that's ROA 800. So the cord only comes into the record, if at all, in defense counsel's factual representation in connection with an objection to the PSR. But second response is, if you read the statute, as amended post-2008, all it says you have to do is use a computer. And both the cell phone, it was an iPhone, that is in the record in the PSR, both the cell phone itself and the MacBook Air satisfy the definition in 18 U.S.C. 2256, subpart 6, which incorporates by reference 18 U.S.C. 1030's definition of computer. And there's no dispute that either one of those things was a computer. Well, that would satisfy the jurisdictional hook, but I'm not sure it satisfies the word transport, the image. Judge, my response to that is I don't, I think, and I argue this in a footnote in my brief. I read, and of course the court obviously could read it a different way. I read defense counsel's argument on transport as, again, the only case the defendant cites in his brief is Runyon. Runyon is a pre-2008 case. The argument, as I read it in brief, is it required interstate travel, as in Runyon. So the defendant cites Runyon to say, in Runyon, this Court reversed the conviction because there was no interstate travel. So I don't think that's the argument that's made. I think that argument is actually waived, whether it's de minimis, whether it's too de minimis. It makes it unlawful to mail, transport, or ship the image. And so when you look at the meaning of transport in the middle of those other two words, it's hard for me to see that. I mean, it seems to me your argument is if he had it on his computer and he moved it from one pocket to the other, that would be transport. Or if he took his phone and put it in another room, that would be transport. No, Judge, because it has to transport in a way that affects interstate commerce, dot, dot, dot, including through the use of a computer. So if I move the images on my cell phone from one pocket to the other, I'm not doing a transport by means of computer. I'm doing a transport by means of my hand from one pocket to the other. I think one of those cases said that just, you know, the fact that the cell phone or whatever the camera was, I think it was a cell phone he took it with, was it not? Yes. The fact that it was shipped from another state into Louisiana satisfied the jurisdictional hook. But it seems to me the conduct that the statute prohibits is different from that. And, Judge, you may be thinking of Runyon, which is a preamendment case, because Runyon did hold that, that the government had failed to show interstate movement, not just for purposes of the jurisdictional hook. I'm satisfied the jurisdictional hook here is satisfied because the computer or the phone was shipped from one state to Louisiana. But then whether he committed the conduct that is rendered unlawful is my problem. Well, it says here he agrees and stipulates that he transported that image using the facility of interstate commerce. Again, I mean, why doesn't that solve the problem? I would say that it does, Judge. And, again, I would say two things. I don't read the defendant's brief on appeal to argue that that transport from one device to the other was too de minimis to equal transport. I would suggest that argument's waived. If it's not waived, I don't think this Court has ever so held so it could not be clear or obvious error, even if this is reviewable at all. If you don't go with our waiver argument, it's no better than plain error review, and I don't think that error could be clear or obvious. And I make that point in a footnote in my brief. All right. So that's our – those are basically our two positions. I'll just say quickly there are two unpublished cases of this Court, Monroe and Laverde-Gutierrez. Actually, I should have said them in the opposite order because Laverde-Gutierrez was decided first. Those cases address third- and fourth-prong review on plain error, where basically a defendant objects for the first time on appeal to sufficiency of a factual basis. And we discussed that third- and fourth-prong analysis in our brief, you know, basically saying it's not enough for the defendant to say, you know, the factual basis isn't sufficient. He has to show that he would not have pled guilty but for that error. Laverde-Gutierrez cites Dominguez-Benitez, a Supreme Court case, basically saying that's the showing the defendant has to make. I'll move on and talk about the two guideline issues, beginning first with the cross-reference. Judge Davis, as you pointed out, binding circuit precedent is McCall, which is basically on all fours. McCall, like this case, involved a surreptitious filming. The issue in McCall was sufficiency of a factual basis rather than applicability of this particular 2G2.2C1 cross-reference. But the inquiry is the same, and I do that analysis in my brief. We're basically talking about does this rise to the level of something that would satisfy the production statute, you know, again, focusing on the words that counsel talks about using and causing. So, you know, what do we do in a case of a surreptitious filming? And what McCall basically says is there's no per se rule in this circuit that the victim, meaning the person who the child who's photographed or whose image is captured, has to sort of knowingly and affirmatively engage in any sort of sexual act. If we had that rule, it would eliminate the applicability of not only the cross-reference, but I would suggest 2251, the production statute, to surreptitious filming. And I don't – I certainly don't think that that's the purpose of either. I cite an older Fifth Circuit case in my brief, Norris, that talks about the danger to the – the injury to the victims. You know, and there are certain types of – there are different kinds of injuries to victims. And a victim who's surreptitiously filmed, there is a great invasion of privacy that lives on. We get so caught up in the minutiae of the guidelines that isn't there something to his argument that's implying the rule of lenity when the guidelines aren't clear? Well, Judge, I know that's his argument. But I would suggest that – In general, I mean, I don't remember many cases applying the rule of lenity to the guidelines. Right? I just don't remember them. Or saying that they must be narrowly construed or anything like that. I can't think of a rule of lenity case under the guidelines. There's the Stinson principle that the Supreme Court announced that where you have a commentary that conflicts with the clear language of the guideline, guideline controls. You know, we've litigated at the Supreme – So fearful the Supreme Court has been so – itself so hypertechnical about this stuff. That's probably the next thing they're going to get worried about. Well, we have the Pew case from the Supreme Court on ex post facto. So we have had some Supreme Court cases that have elevated – I don't want to argue against my own position. But, you know, the Supreme Court jurisprudence on the guidelines is a little schizophrenic because on one hand, they're fabulous. And on the other hand, they're merely a – one hand at the touchstone. And then the next time, oh, well, they're really not that important. You know, so we have a lot of sort of conflicting guidance from the Supreme Court. But I would suggest rule of lenity only applies where the guideline is not clear. I think we have enough circuit case law saying that, you know, in cases of surreptitious filming that, you know, the victim doesn't have to actively participate. So I would suggest that rule of lenity, even if it's applicable to the guidelines, would not apply here. And the last thing I'll touch on is the enhancement for obstruction of justice. Judge Jones, you read from counsel's brief quoting the obstruction guideline. I would suggest that that is an older version of this guideline. Well, no, not you, Judge, but I would suggest that counsel has quoted an older version of the guideline in brief. 3C1.1 has been amended numerous times. There are at least two amendments that are significant here. Amendment 581 was a 1998 amendment to the guidelines. That's what added the closely related offense language in the guideline itself. And then later in 2000, I think it was 2006, you had Amendment 693, and that is what changed the word during to with respect to. And the purpose of the latter was sort of to increase the temporal reach of the guideline. There was the circuit split on whether the guideline could apply to conduct that happened before the federal investigation. That's kind of what was at issue in the Alexander case. That was a case relied on by the district court when the court ruled on this particular objection to the PSR. It's a case addressed in my brief. And then the closely related offense language was to address a circuit split on sort of what instant offense meant. So I would suggest to the Court what our argument is, that the guideline requires two things. The obstructive conduct has to happen with respect to the ongoing investigation of prosecution. Judge Jones, as you pointed out, we've got that. The chronology of events was that basically you had an original indictment in August of 2015. The superseding indictment happens in September of 2015. And then the defendant, Judge Jones, as you pointed out, he's detained pending trial. It's February of 2016, some five months later, is when the defendant makes the call to I think it's his sister's boyfriend, Bubba is his name, and says, you know, reach out to this witness and see if you can pay her off or find out what she knows and get some money from my mother and, you know, pay her off to shut her up or whatever the language was. I don't think there's a dispute that the conduct itself satisfies the particular guideline. That clearly happened during the investigation and the prosecution, and it related to a closely related offense. Judge Davis, in response to some of your points about whether it was relevant conduct, the PSR categorized it as not relevant conduct because of the unusual operation of the 2D1.2D grouping rules. These offenses are exempt from grouping because they would involve, because of the different victims, and so it was not relevant conduct, I think, because of these hypertechnical grouping rules. But it was definitely a closely related offense. And I discussed in my brief how there was a temporal overlap. At the time, the defendant was communicating with this other minor, asking for sexually explicit pictures. So it was closely related, but it was not part of any of the alleged counts in the superseding indictment. It was, Judge, absolutely. It was. Okay. It was the conduct that was alleged in, I believe it was Counts 7 through 10.  And those were the ones that were added in the superseding indictment. Well, then it was more than closely related. It was included. It was. And, in fact, one of the pretrial motions that the defendant had filed was a motion to sever. And the district court denied the motion to sever, finding that the conduct was closely related. I don't think it used that term, but part of the same course of conduct and the same scheme or plan. The last thing I'll mention is counsel made a comment about, well, we weren't sure which victim it was. The defendant would have received discovery by that time. And the discovery clearly included these chats, the exchanges. You know, I would suggest to the Court that the defendant could have certainly known. And I think by the time we get to sentencing, when we're litigating this, there's no question who we're talking about. So regardless of whether the defendant would have known at that time, he would have known at the time of sentencing when we were litigating the 3C1.1 objection. Thank you. Thank you. Mr. Bustane? What I'd like to do is just respond briefly to the cross-reference. And I think that's pretty important because the guidelines provide for someone who is convicted of trafficking in material involving the sexual exploitation of a minor or receiving or transporting that material. And that is 2G2.2. And the guideline range on that, the guideline points are 22. And so the problem here is that we have to wonder whether or not the cross-reference applies. And the cross-reference simply says that if the offense involved causing, transporting, permitting or offering or seeking by notice or advertisement a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, then it applies. Just the fact that we're having this conversation, I think, indicates that there is some doubt as to whether it should apply. And it does not use the language that using a minor to engage in activities. So we can't even, you know, there's a question as to whether or not what he did was using a minor. But, you know, it's like if I'm using a hammer, that doesn't mean if I take a picture of the hammer, I'm using it. You've got the McConnell case, though, that's right in your track. Yes. But the cross-reference doesn't use that word using. It's only in the later notes that it says using. So clearly there's some ambiguity here. And, you know, the whole purpose of lack of vagueness is so that people know what they are dealing with. They know that if you do this, this is your penalty. So in this case, you know, they do a guideline calculation. And, you know, the calculation didn't even say, okay, 2G2.2 is the one that applies. It just jumped right to the cross-reference. The report just simply said cross-reference. And so we're going to go from 22 to 36 with the cross-section. So he went from roughly, well, from five years incarceration to 17 and a half years incarceration. If there is any rule of lenity left, I would submit that at the very least these issues are not clear enough for a defendant to know, and it is not clear that it clearly applies to this case. The obstruction of justice is the same thing. It says the instant conviction. It doesn't say the investigation of other offenses that he was charged with. It says the instant offense. He has to obstruct the instant conviction, not the other charges that might have been pending, the conviction. She said you're quoting a superseded version of that guideline. No, I'm not. The guideline says he has to obstruct the instant conviction. And it relates to, I mean, if you read it in the way English, I think, is generally read, it means that he has to obstruct the instant conviction, and it in some way affected the related charge. It doesn't say obstruction of the instant conviction or obstruction of the related charge. And I think that's, I mean, it is at the very least ambiguous. In my opinion, if you apply English language, it means that he has to obstruct the instant conviction, and he didn't. Thank you. Okay. Thank you.